CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 20 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SHEILA CREWS, ) | |
|     Plaintiff, ) | |
| ) | Case No. 4:20cv00023 |
| v. ) | |
| ) | By:    Hon. Michael F. Urbanski |
| PRINCE CHARLES HOME HEALTHCARE ) | Chief United States District Judge |
| AGENCY, LLC, and JAMES WILLIE ) | |
| GEORGE, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

In 2018, Plaintiff Sheila Crews was a home health care worker employed by Defendant Prince Charles Home Healthcare Agency, LLC ("PCHHA"). She alleges that, while working in the private home of a PCHHA client, she was subjected to unwanted sexual harassment by James Willie George, an individual unaffiliated with PCHHA. After she complained about the alleged harassment, she was fired. Ms. Crews filed a complaint in this court, alleging violations of Title VII and the Virginia Human Rights Act by PCHHA and state-law claims against Mr. George. PCHHA has now filed a motion to dismiss Ms. Crews's complaint.[1] Because Ms. Crews's allegations state claims for hostile work environment and retaliation under Title VII, PCHHA's motion to dismiss those counts will be denied. PCHHA's motion to dismiss Ms. Crews's state-law claims against it, however, will be granted as the VHRA does not create a state-law cause of action for sexual harassment or hostile work environment.

---

[1] Mr. George is named as a defendant and also filed a motion to dismiss. On January 12, 2021, the court was informed that the parties had settled all claims against Mr. George. Accordingly, his motion to dismiss will not be addressed at this time, pending a voluntary dismissal of all claims against him.

I.

PCHHA provides home health care to individuals residing in Danville and Pittsylvania County. Ms. Crews began working at PCHHA in 2016 as a personal care aid/home health care nurse. PCHHA controlled her assignments; she did not have any control over her client list. (Compl. ¶ 12 [ECF No. 1].)

In approximately January of 2018, Ms. Crews's supervisor, Cherise Yuille, assigned Ms. Crews to care for a new client, known here as Mr. Doe, at his home in Pittsylvania County. Mr. Doe also had another individual—Betty—who provided care to him. Betty's husband, Mr. George, would often accompany Betty to Mr. Doe's home. Neither Betty nor Mr. George were employed by PCHHA.

At some point between January 29 and February 9, 2018, Mr. George stood hip-to-hip with Ms. Crews, bumped her hip, and "invaded her personal space." (Id. ¶ 16(a).) The same day, he chased her around Mr. Doe's home, causing her to "fear for her safety." (Id. ¶ 16(b).) As a result, Ms. Crews became fearful of her safety around Mr. George and even had apprehensions about using the bathroom in Mr. Doe's home. On or about February 9, Ms. Crews reported these unwelcome incidents to Ms. Yuille, but PCHHA took no action. (Id. ¶¶ 18–20.)

On February 12, while Ms. Crews was standing at the stove in Mr. Doe's kitchen, Mr. George "forcefully grabbed her by her arms and pulled her toward him such that they were standing face to face." (Id. ¶ 21.) Ms. Crews told Mr. George: "You need to stop. You should be ashamed of yourself." Mr. George replied: "You are so sweet, you look so sweet," and then

laughed. (Id. ¶¶ 22–23.) Again, Ms. Crews reported the incident to Ms. Yuille, telling her she was a "little scared" of Mr. George, but again, PCHHA took no action. (Id. ¶¶ 24–25.)

Two days later, on February 14, Mr. George walked up to Ms. Crews, grabbed her hand, pulled it towards his crotch, and placed her hand on his pants over his genitals. He said, "[T]ouch it," or something similar. (Id. ¶ 26.) Ms. Crews jerked her hand away. Later that same day, Mr. George placed his hands behind Ms. Crews's back and thrust his hips forward toward her; Ms. Crews could see his erect penis through his pants as he did so. Because she was so fearful of Mr. George, Ms. Crews again advised Ms. Yuille of his actions and requested to be assigned to another client. In response, Ms. Yuille told Ms. Crews to "just stay busy," and told her she had to continue to care for Mr. Doe until she could be placed with another client. (Id. ¶ 30.) Apparently, according to Ms. Yuille, PCHHA could not risk the loss of revenue that losing Mr. Doe as a client would entail. Ms. Yuille told Ms. Crews that, if she wanted a job, she had to continue caring for Mr. Doe. (Id.) Ms. Crews alleges that Mr. George continued to harass, assault, and batter her over the next several weeks. (Id. ¶ 31.)

On March 28, Mr. George was in Mr. Doe's home again, but he announced that he was leaving. When Ms. Crews walked into the living room a short time later, Mr. George was standing in the living room. (Id. ¶ 36.) He dropped his pants, grabbed his penis, and shook it at Ms. Crews. (Id. ¶ 37.) Horrified, Ms. Crews left the room and immediately called Lucille Jones, one of the owners of PCHHA. (Id. ¶ 38.) She told Ms. Jones what had transpired, but Ms. Jones told her she had to continue caring for Mr. Doe. (Id. ¶ 40.) Ms. Crews returned to Mr. Doe's home the next day—March 29—but was told she was not to work. (Id. ¶ 41.)

On March 30, Ms. Crews met Ms. Jones at her office. Ms. Jones told Ms. Crews that PCHHA had no placements for Ms. Crews with female clients and that, because there was no work for her, she was being terminated. (Id. ¶¶ 43–45.) As a result of these incidents, Ms. Crews claims she sought care at Gretna Hospital and counseling from her pastor. (Id. ¶ 45.)

Ms. Crews has brought four claims against PCHHA: sex discrimination and harassment under Title VII (Count 1); sex discrimination and harassment under the Virginia Human Rights Act ("VHRA") (Count 2); retaliation under Title VII (Count 3); and retaliation under the VRHA (Count 4). PCHHA filed a motion to dismiss (ECF No. 21) based on Fed. R. Civ. P. 12(b)(6), arguing that the facts alleged do not state a claim under Title VII and that the VHRA does not apply either to it or to Ms. Crews's allegations. The court heard oral argument on the motions on September 14, 2020. (ECF No. 40.) After reviewing the pleadings, arguments of the parties, and applicable law, the motion is ripe for disposition.

II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

shown—that the pleader is entitled to relief." Id. at 679 (internal citation omitted); see also Simmons v. United Mortg. & Loan Inv., 634 F.3d 754, 768 (4th Cir. 2011).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation omitted). "Thus, . . . 'in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

### III.

PCHHA makes several arguments in support of its motion. As to the Title VII claims, it contends Ms. Crews failed to exhaust her administrative remedies before the EEOC because she failed to check the box marked "sex" on her charge of discrimination and that, even if she did appropriately make a charge before the EEOC, she has failed to allege facts sufficient to state a cause of action for a hostile work environment. PCHHA also argues that her retaliation claim is flawed because she does not allege a causal connection between a protected activity

and an adverse employment action. As to the claims under the VHRA, it contends her claims are time-barred and, in any event, are not recognized causes of action under the VHRA.

Regarding the allegation that Ms. Crews failed to exhaust her administrative remedies, it is well-settled that the federal courts lack jurisdiction over Title VII claims that exceed the scope of the EEOC charge. See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407–09 (4th Cir. 2013). Here, PCHHA contends that, because Ms. Crews checked the boxes for "sexual harassment" and "retaliation" but not for "sex" under the heading "Cause of Discrimination Based On," she is barred from alleging sex discrimination in this action. The court finds no merit in this argument.

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). If the factual allegations in the EEOC charge are reasonably related to the factual allegations in the subsequent complaint, the connection is sufficient. If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995); see also Chacko v. Patuxent Inst., 429 F.3d 505, 509–10 (4th Cir. 2005); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).

Here, Ms. Crews's allegations in her complaint unquestionably encompass the allegations made in her original charge. (Compare ECF No. 22-1, with Compl. ¶¶ 10–45.) PCHHA does not contend otherwise. Rather, it argues that, because Ms. Crews did not check

the box for "sex" under the cause of discrimination, she is barred from making such a claim. Limiting Ms. Crews to the allegations in her initial charge, however, would not exclude any of the allegations she raises in this court.

Moreover, as is apparent from her factual allegations, her charge of "sex" discrimination is based on allegations of "sexual harassment" at the hands of Mr. George. There is no doubt that "'sexual harassment' . . . is a form of sex discrimination prohibited by Title VII." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986). Thus, even if this court were to apply the inflexible standard put forth by PCHHA, every one of Ms. Crews's allegations would be properly before the court. By checking the box for "sexual harassment," Ms. Crews definitively stated the type of sex discrimination she was alleging. PCHHA's motion to dismiss on those grounds will be denied.

Next, PCHHA argues that the allegations do not rise to the level of "severe or pervasive" harassment sufficient to state a claim for a "hostile work environment." Under Title VII, employers are prohibited from discriminating against individuals "[w]ith respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. "Since an employee's work environment is a term and condition of employment, Title VII creates a hostile working environment cause of action." Walker v. Mod-U-Kraf Home, LLC, 775 F.3d 202, 207 (4th Cir. 2014). A plaintiff alleging a hostile work environment must prove four elements: (1) there was unwelcome conduct; (2) the unwelcome conduct was based on her sex; (3) the unwelcome conduct was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive working environment; and (4) the conduct is imputable to the employer. Id. The third prong has both

subjective and objective components, and it requires a plaintiff to establish that "she perceived—and that a reasonable person would so perceive—the environment to be abusive and hostile." Id. at 208. In applying this test, the court must consider the totality of the circumstances faced by the plaintiff, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). This test is intended to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (cleaned up).

     Considering all her allegations, the court concludes that Ms. Crews has stated a claim for a hostile work environment as the conduct she alleges she was forced to endure was severe and pervasive. As she recounts the events, she alleges she was touched repeatedly against her will; forced to touch Mr. George's penis through his pants; forcibly restrained and assaulted (when he held her arms by her side); and then subjected to Mr. George pretending to leave, lying in wait, and then exposing himself to her. The last event is particularly disturbing, as Mr. George allegedly announced his intent to leave, luring Ms. Crews into a false sense of security, before surprising her and exposing himself to her. Such conduct, as alleged, is severe. It was repeated, frequent, and both physically threatening and humiliating. Considering the factors set out in Faragher, Ms. Crews's allegations are sufficient to establish that she was subjected to "an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive . . . ." Harris, 510 U.S. at 21.

PCHHA argues that, because Mr. George was not its employee over whom it had any control, it is not liable for the environment his conduct created. The parties agree that "an employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'" Freeman v. Dal-Tile Corp., 750 F.3d 413, 423 (4th Cir. 2014) (quoting Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir 1995)). There is no reasonable dispute that Ms. Crews alleged PCHHA was aware of Mr. George's harassment; Ms. Crews claims she informed Ms. Yuille about Mr. George's actions on February 9, February 12, and February 14. (Compl. ¶¶ 18, 24, 29.) Ms. Yuille allegedly told Ms. Crews to "stay busy," and advised her that she would have to continue working near Mr. George until another placement could be found for her. (Id. ¶ 30.) And there is no real dispute that Ms. Crews has alleged PCHHA took no action "reasonably calculated to end the harassment." In fact, PCHHA's response to Ms. Crews was essentially, "Deal with it." Accordingly, under the Freeman standard, Ms. Crews has adequately stated facts sufficient to impute liability for Mr. George's actions to PCHHA.

The court is not persuaded that, because Mr. George was not an employee and because Ms. Crews did not work in PCHHA offices that PCHHA cannot be liable for Mr. George's allegedly harassing conduct. Mr. Doe's home was Ms. Crews's workplace. Although Ms. Crews need not allege what actions PCHHA could have taken to address the harassing conduct, PCHHA had multiple options available to it. Instead, as alleged, PCHHA stuck its head in the sand and took no action to address alleged conduct that was severe and pervasive harassment. PCHHA's motion to dismiss on those grounds will be denied.

Finally, PCHHA argues that Ms. Crews has not stated a cause of action for retaliation because there is no causal connection between her complaints about the harassing workplace and her termination. Rather, it avers Ms. Crews was terminated because it did not have another placement for her outside of Mr. Doe's home. To state a cause of action for retaliation under Title VII, a plaintiff must allege (1) that she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) there is a causal connection between her protected activity and the adverse employment action. Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). PCHHA argues that Ms. Crews has failed to allege any of the three elements. The court disagrees.

First, as discussed above, the court is persuaded that, as alleged, Ms. Crews was in a hostile work environment, and thus her complaints to Ms. Yuille and Ms. Jones were protected activities. See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 284 (4th Cir. 2015) (holding that "an employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress").

Second, when she was terminated, PCHHA took an adverse employment action against her. Termination is unquestionably an adverse employment action.

Third, Ms. Crews's allegations state a causal connection between her protected activity and her termination. The day after she complained to Ms. Jones, she was told not to go into work and was terminated. There is no question that her termination followed immediately after her complaints. PCHHA argues that it terminated Ms. Crews not because of her complaints about Mr. George, but because it had no other placements for her. That argument puts the cart before the horse. At the motion to dismiss stage, the question is whether the

facts alleged by the plaintiff state a claim, not whether the court believes the defendant's defenses. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) ("[A] motion to dismiss . . . generally cannot reach the merits of an affirmative defense . . . ."). That question is reserved for summary judgment or trial.[2] Although PCHHA would like this court to jump ahead and say that its action was not retaliatory, Ms. Crews has nevertheless alleged facts to state a claim for retaliation, and PCHHA's motion to dismiss her retaliation claim will be denied.

PCHHA is on much stronger legal grounds in arguing that Ms. Crews's state-law claims under the VHRA are insufficient. Count II alleges "sex discrimination and harassment" under the VHRA. At oral argument, Ms. Crews conceded that her claim is only one of sexual harassment. Count IV alleges a claim of retaliation under the VHRA. At the time Ms. Crews was employed at PCHHA,[3] however, neither cause of action was recognized as actionable under the VHRA. See Hott v. VDO Yazaki Corp., 922 F. Supp. 1114, 1128–29 (W.D. Va. 1996) (sexual harassment); Harsell v. Va. Motor Lodges, Inc., No. 7:17-cv-00389, 2018 WL 1022594, at *2 (W.D. Va. Feb. 22, 2018) ("[T]he VHRA does not encompass retaliation.").

---

[2] The burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), only applies once a plaintiff has "established," not merely alleged, a prima facie case of discrimination. See Ramos v. Molina Healthcare, Inc., 963 F. Supp. 2d 511, 524 (E.D. Va. 2013) (noting that, "once Plaintiff establishes a prima facie case, the burden shifts to Defendants 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004))). At the Rule 12(b)(6) stage, the question is not whether the plaintiff has "established" anything; it is only whether, assuming she can establish everything she has alleged, would the law permit her to recover?

[3] The portion of the VHRA Ms. Crews is proceeding under was repealed by the Virginia General Assembly and replaced with a more expansive version in 2020. See Va. Acts 2020 c. 1140 (adopted April 11, 2020).

Because claims of a sexual harassment and retaliation were not covered by the VHRA while Ms. Crews was employed by PCHHA, Counts II and IV will be dismissed with prejudice.[4]

IV.

For the reasons stated above, the court finds that Ms. Crews has alleged facts sufficient to state a claim for sexual harassment and retaliation under Title VII, but not the VHRA. Accordingly, PCHHA's motion to dismiss will be granted with respect to Counts II and IV and denied in all other respects. An appropriate order will issue.

It is so ORDERED.

Entered: January 19, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.01.19 13:31:33
-05'00'

Hon. Michael F. Urbanski
Chief United States District Judge

---

[4] At oral argument, the parties seemingly agreed that PCHHA had too many employees to fall under the VHRA. That basis, too, would serve as adequate grounds to grant the motion to dismiss. See Va. Code Ann. § 2.2-3903(B) (repealed) (limiting the applicability of the VHRA to employers with "more than five but less than 15" employees).